U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

SEP 17 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JAMES H. JONES | CIVIL ACTION NO: 12-1978 |
| VERSUS | JUDGE DONALD E. WALTER |
| ROBERT HERLIN, NGS SUB CORP., and EVOLUTION PETROLEUM CORP. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court is a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on behalf of Defendants. [Doc. 20]. Plaintiffs oppose the motion. For the following reasons, Defendants' motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

### I. PLAINTIFFS' COMPLAINT

This case arises out of a mineral royalty purchase dispute. Plaintiffs are James Jones ("Jones") and his wife Kristi Jones. Jones was employed by Defendant NGS SUB Corp. ("NGS") in oil and gas operations ("Delhi Field") from October 2003 until January 2007. Complaint at ¶6. Because his duties were limited to conducting the field operations, Jones did not have access to the financial records of NGS. *Id.* at ¶¶7-8. Defendant Robert S. Herlin ("Herlin") was the president of NGS and acted as Jones's direct supervisor during the pertinent time period. *Id.* at ¶9. Jones alleges that he had regular contact with Herlin, but their communications only involved the operations of the Delhi Field. *Id.* at ¶10.

Jones argues that, beginning in mid to late 2005, Herlin, acting as president of NGS, engaged

1

in negotiations with Denbury Onshores, LLC ("Denbury"). *Id.* at ¶11. The negotiations related to a potential sale of NGS' interest in the Delhi Field. *Id.* Jones contends that no later than late 2005, NGS and Denbury had agreed that NGS would assign its interest—a 100% working interest—in the Holt Bryant Unit ("HBU") located in Delhi Field to Denbury for $50,000,000 in cash, a 25% "let back" after payout of revisionary working interest, plus Denbury's commitment to develop the Delhi Field by enhanced oil recovery efforts utilizing $CO_2$ ("EOR-$CO_2$"). *Id.* at ¶12.

The complaint then alleges that at some point in late 2005 and/or early 2006, NGS and/or Denbury hired engineers to estimate recoverable oil reserves of the Delhi Field using EOR-$CO_2$. *Id.* at ¶14. The analysis allegedly yielded favorable results and "forecasted a significant increase in production" from the Delhi Field, predicting reserves upwards of 30,000,000 barrels of oil using the EOR-$CO_2$ method. *Id.* at ¶15. Jones alleges that Herlin knew of this information.

Herlin was also aware of various overriding third party interests to the Delhi Field production which would not be conveyed under NGS' deal with Denbury. *Id.* at ¶18. Jones was the owner of a 0.048119 overriding royalty interest (the "Jones Override") in and to the production of Delhi Field. *Id.* at ¶20. Jones contends Herlin—with full knowledge of the negotiations related to the Delhi Field sale and potential for increased production— contacted Jones in late 2005 with an offer to purchase the Jones Override. *Id.* ¶21.

Jones indicates that during the conversation, he specifically asked Herlin why he was interested in purchasing the Jones Override "since the Delhi Field was then only producing approximately 100 barrels of oil a day and in its current condition offered little investment opportunity." *Id.* at ¶22. Jones also alleges that he asked Herlin if there were "any pending, ongoing, or foreseeable negotiations for the sale or redevelopment of the Delhi Field." *Id.* at ¶23. Herlin

reportedly denied the existence of any negotiations, indicating instead that he wanted to purchase the Jones Override in order to "look good to his stockholders." *Id.* at ¶¶24, 26. Jones indicates that Herlin's "representations and denials were false, inaccurate, and made with the intent to gain a material advantage in his negotiations with Jones; Herlin was fully aware that if he truthfully and accurately responded to Jones' inquiries, Jones would not have agreed to convey the Jones' Override to NSG." *Id.* at ¶25.

Herlin reportedly continued to fail to disclose the negotiations involving the Delhi Field during subsequent discussions with Jones. *Id.* at ¶27. Jones indicates that, due to Herlin's acts and omissions, he changed his position and sold the Jones Override to NSG. *Id.* at ¶29.

Jones alleges that Herlin occupied a position of trust and the two enjoyed a relationship of confidence because Herlin was Jones's supervisor. *Id.* at ¶31. By failing to disclose and actively denying the existence of any negotiations related to the sale of the Delhi Field, Jones contends, Herlin violated that relationship. *Id.* at ¶31. Accordingly, Jones indicates that Herlin's actions precluded Jones's valid consent to the contract. *Id.* at ¶35.

Plaintiffs indicate that Jones did not know of Herlin's acts and omissions, particularly Harlin's denial of pending negotiations for the sale and redevelopment of the Delhi Field were false, until on or about October 14, 2011. *Id.* at ¶46.

Plaintiffs allege "Herlin's acts and omissions, as detailed above, establish a cause of action under" Louisiana Civil Code Articles 1967, 1953, 2315 (including malfeasance, intentional misrepresentation, and, in the alternative, negligent misrepresentation). *Id.* at ¶¶34-36. Additionally, Plaintiffs allege a claim under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1401, et seq., and a general cause of action under Louisiana Civil Code Articles 2029 et seq. *Id.* at ¶¶37-

3

38. Further, Kristi Jones is alleged to be damaged due to the marital community existing between the Joneses. *Id.* at ¶39.

Plaintiffs contend NGS is deemed to have knowledge of the events in question because Herlin was acting within the course and scope of his employment with NGS as its president. Plaintiffs also contend NGS enjoyed the benefits of Herlin's actions. *Id.* at ¶40. NGS is alleged to be vicariously liable for Herlin's actions. *Id.* at ¶41. Defendant Evolution Petroleum Corporation is alleged to have acquired NGS by merger, and is therefore liable under the theory of Successor Corporation Liability and/or respondeat superior. *Id.* at 42.

Plaintiffs pray for the recovery of the Jones Override and all fruits attributable to the Jones Override from January 31, 2006 until the present. *Id.* at 43. In the alternative, Plaintiffs pray for all fruits and benefits of the Jones Override from January 31, 2006 until the present, and all future fruits and benefits from the Jones Override. *Id.* at ¶44. Plaintiffs also asks for costs, attorney fees, and general damages available under Louisiana law. *Id.* at ¶45.

## II. LAW AND ANALYSIS

Defendants filed this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 20]. Initially, Defendants argue that Plaintiffs' claims constitute a claim for lesion beyond moiety which is not cognizable under the Louisiana Mineral Code. In the alternative, Defendants claim Plaintiffs have failed to allege sufficient facts to establish any of the claims set forth in the complaint as a matter of law.

Under Federal Rule of Civil Procedure 12(b)(6) a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." In considering a motion to dismiss for failure to state a claim a district court must limit itself to the contents of the pleadings, including

4

attachments thereto. Fed. R. Civ. P. 12(b)(6); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A pleading will survive a Rule 12(b)(6) motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all of the plaintiff's allegations as true. *Twombly*, 550 U.S. at 550. However, the plaintiff's pleading must contain more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## A. Plaintiffs do not assert a disguised lesion claim

Defendants argue that Plaintiffs' claims are nothing more than a disguised claim for lesion beyond moiety. "A sale of a mineral right is not subject to rescission for lesion beyond moiety." La. R.S. 31:17. In support of their argument that Plaintiffs effort to rescind the sale of the Jones' Override is a claim for lesion, Defendants mostly rely on two cases.

In *Thomas v. Pride Oil & Gas Properties, Inc.*, 633 F.Supp.2d 238 (W.D. La. 2009), Judge Hicks concluded that the plaintiffs' claims for mistake as to the cause of an oil lease was tantamount to a claim for lesion: "The foundation of Plaintiffs' allegations as to error concerns the perceived market value fo the lease rights they conveyed, not in the principal cause of the lease. To pursue a claim for purported deficiency in the value of these lease rights ..., be it in error or fraud, is to pursue

5

a claim for lesion beyond moiety." *Id.* at 244 (citations omitted). *Thomas* is distinguishable from this case, however, in two ways.

First, the *Thomas* plaintiff alleged that had he "known of the existence of the Haynesville Shale and its true value," he "would not have agreed to the mineral lease on the terms and at the price paid by Defendant." *Id.* at 240. That allegation sounds entirely in lesion, which provides for the rescission of a sale of an immovable when the price is "less than one half of the fair market value fo the immovable." La. C.C. art. 2589. In this case, the Plaintiffs plead that they would not have sold the Jones' Override if they had known of the impending sale, but do not discuss the disparity in value between the sale price and the fair market value.

Second, and more importantly, the *Thomas* plaintiff alleged that he "did not know of the existence of the Haynesville Shale deposits or of the[ir] exteme value ... but the Defendant and/or its principal did know of the existence and value of the Haynesville Shale," and "took great steps to conceal the existence of the Haynesville Shale from the public." *Id.* at 239–40. The court found that these actions did not constitute fraud. The court recognized that fraud by silence or suppression of the truth is only actionable if there is a duty to disclose, but the mineral lessee did not have such a duty. *Id.* at 241. In this case, the Court finds that Plaintiffs have stated a claim for fraud. *See* Part II.C *infra*. The existence of a duty to disclose is irrelevant here, since the alleged fraud was not through "silence or suppression of the truth," but by misrepresentation. Plaintiffs essentially allege that Herlin denied the existence of any ongoing negotiations regarding the sale of the Delhi Field, while at the same time, directly engaging in such negotiations with Denbury. The Court finds the difference between lying by omission and lying by misrepresentation to be striking, particularly in light of these facts.

The Court finds *Cascio v. Twin Cities Development, LLC*, 45,634 (La. App. 2 Cir. 9/2210), 48 So.3d 341—the second case Defendants rely on—similarly distinguishable.[1] Accordingly, the Court does not find merit in Defendants' argument that Plaintiffs have simply asserted a disguised lesion claim.

### B. Louisiana Civil Code article 1967—Detrimental Reliance

Plaintiffs allege Herlin's acts and omissions give rise to a cause of action under Louisiana Civil Code article 1967. Article 1967 provides:

> Cause is the reason why a party obligates himself.
>
> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

In order to establish a cause of action for detrimental reliance, a plaintiff must show: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Parish Consol. Gov't*, 2004-1459 (La. 4/12/2005); 907 So. 2d 37, 59. "The doctrine of detrimental reliance is 'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Id.*

Defendants argument in favor of dismissal of Plaintiffs' claim for detrimental reliance is twofold. First, Defendants claim Plaintiffs do not allege a promise made by Herlin to Jones. [Doc.

---

[1] In that case, the plaintiffs sued for recission of a mineral lease based on error concerning a substantial quality of the object of the contract—namely, the existence of a mineral deposit. *Id.* at 342. The nature of the error in *Cascio*, the existence of a mineral deposit, is different than the vice of consent alleged in this case. Although the value of mineral deposits is speculative, *See Thomas*, 633 F.Supp.2d at 243, the *fact* of negotiations is certain.

20-1 at 11]. Second, assuming a promise was made, Jones's reliance on that promise was unreasonable as a matter of law. [Doc. 20-1 at 12].

Civil Code article 1967 provides that "A party may be obligated by a *promise* when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. C.C. art. 1967 (emphasis added). The First Circuit Court of Appeal has construed this language to require "the manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something." *Wooley v. Lucksinger*, 2006-1167 (La. App. 1 Cir. 5/4/07); 961 So. 2d 1228, 1239 (citing Blacks Law Dict. 1228–29 (7th ed. 1999)).

Under this definition, it does not appear that Louisiana courts would recognize Herlin's representation regarding the absence of negotiations as a promise under article 1967, since Herlin did not obligate himself to do or not do something. Plaintiffs argue that "case law clearly holds its statements [sic] made concerning a set of facts have been held to be a promise under Art. 1967." [Doc. 24 at 8]. Notably, Plaintiffs fail to cite to a single case that supports this proposition.

Because they have not alleged that Herlin made a *promise* which caused them to change their position to their detriment, Plaintiffs have failed to demonstrate that the facts alleged could possibly allow them to recover under Civil Code article 1967. Therefore, Defendants' motion to dismiss Plaintiffs' detrimental reliance claim is hereby **GRANTED**.

**C. Louisiana Civil Code article 1953—Fraud**

Plaintiffs allege that Herlin's actions constitute fraud under Louisiana Civil Code article 1953. Article 1953 defines fraud as "a misrepresentation or suppression of the truth made with the

8

intention either to obtain an just advantage for one party or to cause a loss or inconvenience to the other." "Fraud may also result from silence or inaction." *Id.*

Defendants assume that Plaintiffs are asserting a claim for "delictual fraud" because Plaintiffs did not identify the true nature of this cause of action. [Doc. 20-1 at 16]. Plaintiffs do not dispute Defendants claim that Plaintiffs are asserting an action for delictual fraud, but the Court notes another possibility. A party to a contract may state a cause of action in fraud against another party with whom they have contracted, which sounds in contract rather than tort.[2]

"There are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract." *Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C.*, 2011-2254 (La. App. 1 Cir. 7/10/12). 97 So. 3d 595, 599.

Because Defendants argue that Plaintiffs seek to establish a claim for delictual fraud rather than contractual fraud, their arguments against this claim do not properly address the issues before the Court. These arguments will be addressed in the analysis of Plaintiffs' claim for intentional misrepresentation, *infra*.

The Court finds that Plaintiffs have stated a claim upon which relief may be granted for

---

[2] Plaintiffs' cause of action under Article 1953 is duplicitous no matter how it is construed. If the Court were to construe paragraph 35 as a claim for delictual fraud, it would mirror Plaintiffs' claim for intentional misrepresentation. *See* Part II.D.2 *infra*. To the extent that paragraph 35 alleges a claim for contractual fraud, it would be included in Plaintiffs claim for dissolution of a contract listed in paragraph 38. Nevertheless, the Court will analyze the contractual fraud claim here.

contractual fraud. Plaintiffs satisfied the first element by stating that "Herlin, with full knowledge of the discussions concerning the Delhi Field Sale and anticipated benefits of the EOR-CO2 redevelopment of the Delhi Field, contacted Jones by telephone in late 2005 and offered to purchase the Jones' Override." Complaint at ¶21. "During that conversation, Jones directly inquired as to whether there were any pending, ongoing, or foreseeable negotiations for the sale or redevelopment of the Delhi Field." *Id.* at ¶23. "Herlin, throughout that conversation, denied the existence of any pending, ongoing, or foreseeable negotiations for the sale or redevelopment of the Delhi Field." *Id.* at ¶24. The second element is satisfied in paragraph 25, wherein Plaintiffs plead that "Herlin's representations and denials were false, inaccurate, and made with the intent to gain a material advantage in his negotiations with Jones." The third element is met in paragraph 28: "Had Herlin either voluntarily disclosed or truthfully responded to Jones' inquiries, Jones would not have consented to sale of the Jones' Override."

As Plaintiffs have pleaded facts sufficient to establish a cause of action for contractual fraud, Defendants' motion to dismiss Plaintiffs' claim under article 1953 is hereby **DENIED**.

### D. Louisiana Civil Code article 2315

Paragraph 36 of Plaintiffs' complaint alleges a cause of action under Civil Code article 2315. Specifically, Plaintiffs claim Herlin's acts and omissions constitute malfeasance, intentional misrepresentation, or in the alternative, negligent misrepresentation.

#### *1. Malfeasance*

The fountainhead of Louisiana tort law, Civil Code article 2315, has been interpreted to permit a cause of action for malfeasance. *See Ellet v. Newland*, 132 SO. 761, 762 (La. 1931); *see also Boyte v. Wooten*, No. 04-1818, 2007 WL 3023935, *6 (W.D. La. Oct. 16, 2007). In 1931, the

Louisiana Supreme Court noted that "[m]alfeasance is the doing of an act which is wholly wrongful and unlawful, *** the doing of an act which a person ought not to do at all." *Ellet*, 132 So. at 1024 (citation omitted).

Plaintiffs argue that, although *Ellet* is an old case, it remains good law. Accordingly, Plaintiffs argue that they have pled a "wholly and unlawful act due to the provisions of knowingly providing incorrect information." [Doc. 24 at 11].

Claims for malfeasance against a corporate officer are typically alleged in order to hold the officer personally liable. *See, e.g., Bloxom v. City of Shreveport*, 47,155 (La. App. 2 Cir. 5/16/12), 103 So. 2d 383, 392; *Ellet*, 171 La. at 1025. Under Louisiana law, a corporate officer is not personally liable to third parties for acts conducted in the names of the corporation unless he has engaged in fraud or malfeasance. La. R.S. 12:95; *Kemper v. Don Coleman, Jr., Builder, Inc.*, 31,576 (La. App. 2 Cir. 7/28/99), 946 So. 2d 11, 18.

The Court finds that the facts alleged in Plaintiffs' complaint do not arise to the level of malfeasance. First, malfeasance under Louisiana law appears to be reserved for extremely egregious offenses, generally arising to the level of criminal conduct. *See Ellet*, 171 La. at 1025, *Boyte v. Wooten*, No. 04-1818, 2007 WL 3023935, *6–7 (W.D. La. Oct. 16, 2007). Plaintiffs admit that they have not alleged conduct arising to this level.

It appears that Plaintiffs claim for malfeasance has been thrown against the proverbial wall along with various other theories of relief in order to "see if it sticks." Plaintiffs have not shown any entitlement to relief under a malfeasance-theory other than essentially alleging that "Herlin did a very bad thing." While the Second Circuit has suggested that a claim for malfeasance post-tort reform might be analyzed under Louisiana's duty-risk theory, *see Century Ready Mix Corporation v. Boyte*,

42,634 (La. App. 2 Cir. 10/24/07), 968 So. 2d 893, 900, Plaintiffs have not seen it fit to explain in their opposition how this claim survives such an analysis.

Therefore, the Court finds that Plaintiffs have failed to state a claim for malfeasance and Defendants motion to dismiss this claim is hereby **GRANTED.**

### 2. *Intentional Misrepresentation*

Plaintiffs also claim Herlin's actions give rise to a cause of action for intentional misrepresentation under Article 2315. A claim for intentional or fraudulent misrepresentation has three elements: "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury."[3] *Sys. Eng'g & Sec.,Inc. v. Sci. & Eng'g Ass'n*, 2006-0974 (La. App. 4 Cir. 6/20/07), 962 So. 2d 1089, 1091. In order to state a cause of action for fraud from silence or suppression of the truth, "there must exist a duty to speak or disclose information." *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992).

Defendants argue that Plaintiffs cannot establish the first element of fraud because Plaintiffs cannot prove Herlin owed a duty to disclose the information about negotiations relating to the sale of the Delhi Field. [Doc. 20-1 at 17]. In arguing that Herlin was silent or suppressed truth, rather than making a misrepresentation, Defendants argue Plaintiffs' claim that Herlin actively denied any ongoing negotiations equates to a failure to disclose.

The Court finds no merit in Defendants argument that Herlin is alleged to be silent or suppressed the truth. Herlin is alleged to have denied any ongoing negotiations regarding the sale

---

[3] As the elements of delictual fraud and intentional misrepresentation are essentially identical, Defendants argument in favor of dismissal of the fraud claim will be analyzed here. *See Bauer v. Dean Morris, L.L.P.*, Nos. 08-5013, 08-5014, 2011 WL 3924963, *6 (E.D. La. Sept. 7, 2011).

12

of the Delhi Field. Complaint at ¶24. This amounts to Herlin representing that "there were no ongoing negotiations." Accordingly, this Court has no difficulty finding that Plaintiffs allege that Herlin made a misrepresentation. Furthermore, even if Herlin's denial was different than a misrepresentation, Herlin had a duty to disclose the ongoing negotiations as discussed below.

Defendants also argue that, even if an "active denial" is different than a failure to disclose, Plaintiffs cannot prove the "justifiable reliance" element of fraud and intentional misrepresentation. [Doc. 20-1 at 18]. Because Jones can show justifiable reliance on or harm resulting from Defendants misrepresentations for the same reasons stated in the preceding section, the Defendants' argument is futile. Finally, Defendants argue that the Plaintiffs cannot show Herlin's active denial constitutes a "misrepresentation of material fact." [Doc. 20-1 at 18]. This Court finds this argument similarly unavailing.

### 3. Negligent Misrepresentation

Plaintiffs allege, as an alternative to the intentional misrepresentation claim, that Herlin's actions give rise to a claim for negligent misrepresentation. In order to state a cause of action for negligent misrepresentation under Louisiana law, "(1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation." *Kadlec Med. Ctr. v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008).

The Defendants argue that there is no duty to disclose, since no contract or fiduciary duty exists. Under Louisiana law, there is a duty to provide correct information which is "imposed by law based upon policy considerations due to the tortfeasor's knowledge of the prospective use of the

13

information which expands the bounds of his duty of reasonable care to encompass the intended user." ... "The theme in [Louisiana cases on negligent misrepresentation] is that one is liable for negligent disclosure if he has superior knowledge and knows the other party is relying upon him for such knowledge." *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 440-41 (5th Cir.2011). Further, in negligent misrepresentation cases, Louisiana courts have routinely held that even when there is no initial duty to disclose information, once a party volunteers information, it assumes a duty to insure that the information volunteered is correct. *See Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, 527 F.3d 412, 419 (5th Cir. 2008). For these reasons, the Defendants' argument that there is no duty to disclose is flawed.

The Defendants also argue that there was no reasonable reliance by Jones. Simply stated, because Jones can show reliance on Defendants' misrepresentations as discussed earlier, the Defendants' argument is without merit.

**E. Louisiana Revised Statutes § 51:1401, et seq.—Louisiana Unfair Trade Practices Act**

Plaintiffs allege in paragraph 37 of their complaint that "Herlin's acts and omissions, as outlined above, establish a cause of action under Louisiana Unfair Trade Practices Act" ("LUTPA"). Defendants contend that, to the extent the complaint pleads facts giving rise to a LUTPA claim, that claim is perempted. [Doc. 20-1 at 25].

Title 51, Louisiana Revised Statutes section 1409 states provides that "The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." The time for filing a private cause of action under LUTPA is peremptive rather than prescriptive. *See, e.g. Morris v. Sears, Roebuck and Co.*, 1999-2772 (La. App. 4 Cir. 5/31/00), 765 So. 2d 419, 422. It is undisputed that Plaintiff alleges the actions giving

rise to his claims occurred in 2005 and 2006, between six and seven years before this action was filed on July 23, 2012. [Doc. 1].

Plaintiffs argue this period should be considered "suspended and/or not tolled until October 11, 2011" under the doctrine of contra non valentem. [Doc. 24 at 11-12]. This argument demonstrates a clear misunderstanding of Louisiana law regarding limitations periods. "Peremption may not be renounced, interrupted, or suspended." La. C.C. art. 3461. "Because the limitation period of LUPTA is peremptive, the doctrine of *contra non valentem* does not apply." *Morris*, 765 So. 2d at 422 (citations omitted).

To the extent Plaintiffs' complaint attempts to state a cause of action under LUTPA, that claim is perempted because Plaintiffs did not file this suit within one year of the alleged wrongdoing. Defendants' motion to dismiss Plaintiffs' LUTPA claim is hereby **GRANTED**.

**F. Louisiana Civil Code articles 2029 et seq.—Action Recognizing Nullity of Contract**

Finally, Plaintiffs allege that Herlin's acts and omissions establish a cause of action under Civil Code article 2029, thereby causing the contract to be a nullity. Complaint at ¶38. Article 2029 provides that "A contract is null when the requirements for its formation have not been met." The four requirements for a valid contract in Louisiana are cause, capacity, consent, and a lawful object. *Granger v. Christus Health Cent. Louisiana*, 2012-1892, p. 33 (La. 6/28/13), --- So. 3d ---.

Consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. The Court has already determined that Plaintiffs state a claim for contractual fraud. *see* Part II.C *supra*. Therefore, Plaintiffs have stated a claim upon which relief may be granted for nullity of a contract under Civil Code article 2029. Accordingly, Defendants' motion to dismiss Plaintiffs' claim under Article 2029 is **DENIED**.

15

### G. Prescription

Defendants argue that Plaintiffs claims, even if properly pleaded, have prescribed. All of Plaintiffs claims above are delictual in nature, with the exception of the action to recognize a relatively null contract and the LUTPA claim, which have already been addressed.

Tort claims are generally subject to a one-year prescriptive period. La. C.C. art. 3492. An action to recognize the nullity of a contract prescribes five years from "the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud." La. C.C. art 2032.

Plaintiffs aver that the transactions at issue in this case, as well as the negotiations leading up to those transactions, occurred in late 2005 to early 2006. However, Plaintiffs also allege that "[Jones] was not aware of Herlin's acts and omissions plead above and particularly that Herlin's denial of any pending negotiations for the sale or redevelopment of the Delhi Field, including those involving Denbury, were false and inaccurate until on or about October 14, 2011. Complaint at ¶46.

A federal court sitting in diversity must apply state law to determine the timeliness of an action. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751–52 (1980). In Louisiana, prescription can be suspended or interrupted. The doctrine of contra non valentum provides one method for suspending prescription. *See Carter v. Haygood*, 2004-0646 (La. 1/19/05), 892 So. 2d 1261, 1269. Contra non valentum may be applied in four situations, including when the cause of action is not known, or reasonably knowable, by the plaintiff. *Id.*

Plaintiffs have alleged that they did not know of the facts giving rise to their causes of action until October 14, 2011. The Court cannot say—at the motion to dismiss stage—that the causes of action have prescribed. Plaintiffs filed this suit on July 23, 2012. *See* Complaint. As the suit was

filed within one year from the date Plaintiffs allege Jones discovered the facts giving rise to their claim, Defendants motion to dismiss for reasons of prescription is **DENIED**.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim upon which relief may be granted [Doc. 20] is hereby **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Plaintiffs' claims under Louisiana Civil Code articles 1967 and 2315, and Louisiana Revised Statutes section 51:1401 et seq. **IT IS ORDERED** that these claims are hereby dismissed with prejudice. The motion is denied as to Plaintiffs' claims under Louisiana Civil Code articles 1953 and 2029, et seq.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this the 17 day of September, 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE